Jeffrey S. Salisbury, OSB No. 97093
LAW OFFICE OF JEFFREY S. SALISBURY
4725 Village Plaza Loop, Suite 200
Eugene, Oregon 97401
Telephone:   (541) 345-7007
Facsimile:    (541) 342-5213

Attorney for Steven Romania

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STEVEN ROMANIA,<br><br>PLAINTIFF,<br><br>V.<br><br>JASON VOLK AND DOES 1-5,<br><br>DEFENDANTS | No. _____<br><br>**COMPLAINT FOR VIOLATION OF STATE AND FEDERAL SECURITIES LAWS AND IN TORT**<br><br>**JURY TRIAL DEMANDED** |

For his complaint, Plaintiff, Steven Romania, alleges on information and belief against Defendant, Jason Volk, as follows:

**PRELIMINARY ALLEGATIONS**

1. Plaintiff is an individual who has resided in Eugene, Oregon at all relevant times. Plaintiff is a retired automobile dealer who currently develops real estate.

2. Defendant is an individual who has resided at relevant times, and currently resides, in Houston, Texas. He controlled West Bay Trading, L.P. ("West Bay") and Playa Partners, Corp. ("Playa"), as described and alleged below, by being the owner of Playa, which in turn was the general partner of West Bay.

3. Doe Defendants 1-5 are legally responsible for some or all of the wrongdoing and damages alleged herein, but Plaintiff is currently unaware of their identities and will identify and amend this Complaint accordingly once they are learned.

4. This court has subject matter jurisdiction of this action pursuant to the Securities Act of 1933, 15 USC §77a et seq. (the "1933 Act"), the Securities Exchange Act of 1934, 15 USC § 78a et seq. (the "1934 Act"), the diversity of citizenship of the parties, and principles of pendant jurisdiction.

5. Venue is proper in this judicial district under 15 USC §78aa and other applicable authorities because material acts or transactions comprising and relating to the violations complained of herein occurred here.

## FACTUAL ALLEGATIONS

6. In or about November 2006, Plaintiff met Defendant socially. Defendant held himself out to Plaintiff as an experienced commodities trader and hedge fund manager. Plaintiff on the other hand had never studied or invested in commodities or hedge funds and did not understand their mechanics or risks.

7. Not long thereafter, Defendant advised Plaintiff that he was offering interests in a limited partnership investment fund referenced above as West Bay, which was an investment security under state and federal securities laws. Plaintiff indicated a possible interest in West Bay but advised Defendant that he would need access to his money within approximately 1 to 1.5 years in order to purchase fishing boats for a business venture to which he was committed, and Defendant said that the investment returns, or at least the investment principal, would be available for that.

8. In or about January 2007, Defendant telephoned Plaintiff, sent e-mails to him, and sent him materials concerning the West Bay offering to induce Plaintiff to invest in that offering. Plaintiff received most or all of these communications and materials in Eugene, Oregon. One of the materials sent to him there was a private placement memorandum ("PPM") which described the offering in detail.

9. In the above communications generally, Defendant described West Bay as an investment fund opportunity which offered attractive profit potential. In connection with doing so, Defendant made numerous specific misrepresentations and omissions of fact in the PPM, as follows:

(a) Defendant represented that West Bay would be a hedge fund of sorts, incorporating four different key tactical strategy pools designed to manage risk while providing the opportunity for attractive returns, when in fact Defendant had no intention of West Bay so operating and never caused it to so operate, but instead merely caused it to trade commodities in a single account.

(b) Defendant represented that West Bay investors could withdraw their investment funds at the end of each calendar quarter on ten days notice, when in fact it had no intention of doing so and failed and refused to honor Plaintiff's timely request to so liquidate his investment in West Bay.

(c) Defendant omitted and failed to disclose to Plaintiff that the West Bay offering had not been properly registered with the Securities and Exchange Commission ("SEC") or exempted from registration with the SEC or the state of Oregon and thus was an illegal offering in violation of multiple state and federal laws.

(d) Defendant represented that the large, international investment house of Merrill Lynch would be West Bay's broker, when in fact a far less prestigious firm, Rosenthal Collins Group, LLC ("RCG"), served as broker.

(e) The PPM represented that it contained an illustration of how West Bay would achieve a blended risk exposure through the tactical strategy pools mentioned above, but no such illustration was included but instead was omitted from the memorandum.

(f) Defendant represented in the PPM that investors such as Plaintiff would receive quarterly account statements and annual audited financial statements of West Bay's business and operations, when in fact Defendant had no intention of doing so and did not provide the promised reporting.

(g) Defendant represented that West Bay, Defendant and/or Playa were in the process of registering as an SEC investment advisory firm, when in fact no such registration ever occurred, and hence Defendant, Playa and West Bay operated illegally.

(h) The PPM omitted and failed to disclose any investment track record or performance history of Defendant, West Bay or Playa, despite the fact that West Bay had purportedly used some $250,000

to test its investment and trading strategies during the year preceding Plaintiff's investment in West Bay.

(i) Defendant represented in the PPM that West Bay would employ an ongoing risk management process entailing trading style diversification, exposure limits and stop losses, daily profit, loss and risk reviews, monitoring of advisors, and drawdown levels triggering additional reviews. Defendant in fact never implemented this system and had no intention of doing so.

(j) The PPM states there is a shareholder agreement in place providing that an "other shareholder" may acquire stock in West Bay and/or Playa and appoint a new investment manager for West Bay under certain circumstances. However the PPM omitted and failed to state who the other shareholder was, how much stock he, she or it could acquire, or what criteria would be used to select a new investment manager for West Bay.

(k) Defendant represented in the PPM that West Bay would utilize a "fund-of-funds" or "multi-manager" approach by which its funds would be invested with multiple advisors in various portfolios. Far from this approach, Defendant invested and managed Plaintiff's funds himself in a single account and did not intend to do otherwise.

10. Based on Defendant's oral and written misrepresentations and omissions of fact detailed above, Plaintiff invested $350,000 in West Bay on or about January 19, 2007 by wiring funds to Defendant in that amount.

11. Thereafter, during the first ten months of 2007, Plaintiff's investment value in West Bay remained roughly the same without any substantial decline. In July, Defendant promised in writing to Plaintiff that he would deliver positive investment returns. As of November 15, 2007, Defendant reported to Plaintiff that his investment value was $323,109. Defendant represented at that time via e-mail that he was choosing to "play it safe" with the trading volume and nature of West Bay's investment positions. He further reported then via e-mail that such strategy "has paid off, and slowly but surely the fund is getting the returns."

12. The representations of the preceding paragraph were false and misleading and had the effect of lulling and perpetuating in Plaintiff a sense of comfort and trust in Defendant. In fact, Defendant at that time was neither "playing it safe" nor merely holding "a small position in soy beans" as represented on November 15. He instead was aggressively trading high risk futures and commodities contracts in the German DAX stock market index, wheat, U.S. Treasury Bonds and Notes, and the Standard & Poors stock index.

13. Shortly thereafter, on or about November 20, Plaintiff telephoned Defendant and told him that his boat purchases money payment would be coming due in early January and that he would need to have his West Bay investment funds returned to him by then. Defendant acknowledged that he understood this and said he had only in a few open positions anyway, such that he could easily manage Plaintiff's investment funds for the needed early January withdrawal.

14. Rather than doing so, or at least "playing it safe" in preparation for returning Plaintiff's funds to him in early January to facilitate his boat purchase, Defendant continued to invest aggressively in high risk futures and commodities contracts during the balance of November, all of December and early January. Due to such high risk investing by Defendant, and given his failure to employ the diversification or risk management techniques represented in the PPM and as alleged above, Defendant lost virtually all $350,000 of Plaintiff's West Bay investment during such late November to early January timeframe.

15. Contrary to his representations, at no time during the West Bay investment did Defendant provide Plaintiff with timely and meaningful brokerage account statements to apprise Plaintiff of the nature and status of his investment in West Bay. Defendant thus effectively concealed from Plaintiff the meaning and import of his trading activities – particularly after Plaintiff advised him in November of his need for funds in early January – and the plummeting value of Plaintiff's West Bay investment during that late 2007 timeframe.

16. When Plaintiff contacted Defendant in January to retrieve his West Bay funds to effectuate

his boat purchases, he was shocked to learn that Defendant had lost his entire investment. Not only did Defendant's misconduct cause Plaintiff to lose his $350,000, it also caused him to incur additional boat purchase related financing and other expenses and opportunity costs, all of which would have been avoided had Defendant represented all material facts properly in the PPM or acted appropriately in response to Plaintiff advising him in late November of his need for funds in early January.

17. Had Defendant properly disclosed all material facts in the PPM, Plaintiff would not have invested in West Bay, and had Defendant acted properly in response to Plaintiff's late November request, Defendant would have managed Plaintiff's West Bay investment prudently, as he said he was doing, to be able to return Plaintiff's funds by early January. Defendant failed to do either of these things in order to perpetuate Plaintiff's investment funds and to earn substantial compensation by trading and managing them.

## **FIRST CLAIM FOR RELIEF**

**(Violation of Section 10(b) of the 1934 Act and SEC Rule 10b-5 Thereunder)**

18. Plaintiff incorporates paragraphs 1 through 16 and brings this First Claim for Relief against Defendant for violation of Section 10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder.

19. The representations and omissions of fact made by Defendant as alleged above were material, and Defendant made them with the intent to induce Plaintiff to invest in West Bay.

20. Defendant made his misrepresentations and omissions knowing them to be false and misleading or recklessly disregarding their false and misleading nature.

21. Plaintiff relied on Defendant's misrepresentations and omissions in deciding to purchase an investment security in West Bay, and Defendant's misconduct caused Plaintiff to lose virtually his entire investment in West Bay.

22. As a result, Plaintiff sustained damages in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 12(a)(2) of the 1933 Act)

23. Plaintiff incorporates paragraphs 1 – 21 and brings this Second Claim for Relief against Defendant for violation of Section 12(a)(2) of the 1933 Act.

24. Defendant actively sold Plaintiff his investment security in West Bay pursuant to the material misrepresentations and omissions set forth above.

25. Plaintiff did not know of those untruths or omissions at the time of his investment.

26. Defendant on the other hand knew of the untruths and omissions or in the exercise of reasonable diligence could have known of them.

27. As a result, Defendant is liable for damages to Plaintiff in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF

### (Violation of ORS 59.115 (1)(b))

28. Plaintiff incorporates paragraphs 1 – 26 and brings this Third Claim for Relief against Defendant for violation of ORS 59.115(1)(B).

29. Defendant successfully solicited the sale to Plaintiff of an investment security in West Bay (a) pursuant to violations of ORS 59.135 (1) and (3), namely devices, schemes and artifices to defraud which acts, practices and courses of conduct operated as a fraud and deceit on Plaintiff, and (b) pursuant to the material misrepresentations and omissions of fact set forth above.

30. Plaintiff did not know of those untruths or omissions at the time.

31. However Defendant knew of the untruths and omissions or in the exercise of reasonable diligence could have known of them.

32. As a result, Defendant hereby tenders his security investment in West Bay to Defendant, and Defendant is liable to pay damages and interest under ORS 59.115 (2) to Plaintiff in an amount to be proved at trial.

## FOURTH CLAIM FOR RELIEF

### (Oregon Common Law Breach of Fiduciary Duty)

33. Plaintiff incorporates paragraphs 1 – 31 and brings this Fourth Claim for Relief against Defendant for Oregon common law breach of fiduciary duty.

34. By virtue of Defendant's expertise, high level of control over Plaintiff's West Bay investment money, and the very substantial trust reposed by Plaintiff in Defendant in connection with his West Bay investment, particularly in light of Plaintiff's lack of knowledge or experience in commodities, futures or hedge funds and the complexity of such investments, Defendant was a fiduciary for the benefit of Plaintiff in relation to all matters alleged herein.

35. Defendant thus owed Plaintiff high duties of loyalty, candor, care, skill and diligence.

36. Defendant breached all such duties by making the above alleged misrepresentations and omissions and by failing to manage Plaintiff's West Bay investment prudently and appropriately so as to prepare it for the proper liquidation and return its cash proceeds to Plaintiff after he notified Defendant in November 2007 that he would need his funds by January 2008.

37. Defendant thereby caused Plaintiff to sustain compensatory damages in an amount to be proved at trial and is further liable for punitive damages because Defendant acted with malice and reckless and outrageous indifference to a highly unreasonable risk of harm against Plaintiff as alleged above and further acted with conscious indifference to the welfare of Plaintiff as also alleged above.

## FIFTH CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

38. Plaintiff incorporates paragraphs 1 – 36 and brings this Fifth Claim for Relief against Defendant for Oregon breach of the implied covenant of good faith and fair dealing.

39. As alleged above, Defendant entered into an agreement with Plaintiff whereby Defendant agreed to allow Plaintiff an opportunity to liquidate his West Bay investment at the end of each calendar quarter on ten days notice.

40. Plaintiff notified Defendant in late November 2007 that he would need his West Bay investment funds liquidated and returned to him by January 2008.

41. There is implied in every Oregon contract a covenant of good faith and fair dealing whereby a party is obligated to act fairly and in good faith so as to not deprive the other party of the benefits of their agreements.

42. Plaintiff honored all of the material terms and conditions of the parties' agreement alleged hereinabove.

43. Defendant breached the implied covenant of good faith and fair dealing of the parties' contract by failing and refusing, upon the November request for liquidation, to position Plaintiff's West Bay investment funds prudently in anticipation for liquidation in January 2008, and instead traded them excessively and with too much risk relative to the January liquidation requirement.

44. Defendant thereby caused Plaintiff to sustain compensatory damages in an amount to be proved at trial and is further liable for punitive damages because Defendant acted with malice and reckless and outrageous indifference to a highly unreasonable risk of harm against Plaintiff as alleged above and further acted with conscious indifference to the welfare of Plaintiff as also alleged above.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff request of the Court the following relief:

1. Monetary damages of $350,000 for the loss of his West Bay investment under the First through Fifth Claims for Relief.

2. Monetary damages in an amount to be proved at trial for failed boat purchase related damages under the First, Fourth and Fifth Claims for Relief.

3. Punitive damages under Plaintiff's Fourth and Fifth Claims for Relief.

4. Interest on Plaintiff's loss of his West Bay investment under the First through Fifth Claims for Relief at the legal rate from the date of the investment through payment thereof to Plaintiff.

5. Reasonable attorney fees and legal costs under the Fourth Claim for Relief in an amount

1 | determined by the Court.

2 |     6. Any further relief deemed just and proper by the Court.
determined by the Court.

6. Any further relief deemed just and proper by the Court.

_Jeffrey S. Salisbury_      DATE 7/18/08

JEFFREY S. SALISBURY
Attorney for Plaintiff